# Third District Court of Appeal

## State of Florida

Opinion filed July 12, 2017.
Not final until disposition of timely filed motion for rehearing.

————————————

No. 3D16-1286
Lower Tribunal No. 12-19622

————————————

## Building B1, LLC,
Appellant,

vs.

## Component Repair Services, Inc.,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Antonio Arzola, Judge.

Downs Law Group, P.A. and Jeremy D. Friedman, for appellant.

Fuerst Ittleman David & Joseph, Christopher M. David and Jeffrey J. Molinaro, for appellee.

Before SUAREZ, EMAS and LOGUE, JJ.

EMAS, J.

Appellant Building B1, LLC, appeals from an amended final judgment in favor of Component Repair Services (CRS), following a nonjury trial on appellant's claim (and appellee's counterclaim) for breach of a commercial lease agreement. For the reasons that follow, we affirm.

On November 22, 2000, Building B1 (the landlord) and CRS (the tenant) entered into a commercial lease for a warehouse in Miami.[1] The lease was for a term of five years commencing in January 2001 and terminating on December 31, 2005. The terms provided CRS an option to renew the lease for an additional five-year term beginning in January 2006 and ending on December 31, 2010. The exercise of this option was required to be made in writing and sent by certified mail to Building B1 120 days before the end of the five-year lease period.

In October of 2005, Hurricane Wilma caused damage to the warehouse. CRS spoke to Baitinger about the damage and Building B1 instructed CRS to make and pay for the repairs, and represented that Building B1 would reimburse CRS for the expenses related to the repairs. CRS made the necessary repairs.

On January 1, 2006 (after expiration of the five-year lease period), CRS remained in the warehouse. Several discussions were held and written correspondence exchanged in an unsuccessful attempt to formally renew the lease

---

[1] David Baitinger was the original landlord and signatory to the 2000 lease. In April of 2004, Baitinger created Building B1 and assigned the lease to Building B1.

or enter into a new lease. From January 1, 2006 through July 31, 2009, CRS remained in the warehouse and continued to pay rent on a monthly basis. On July 31, 2009, CRS vacated the warehouse without notice to Building B1.

In May of 2012, Building B1 filed a one-count complaint against CRS, alleging that, through discussion and correspondence, the parties had agreed to renew the lease for the period of January 1, 2006 through December 31, 2010, and that CRS breached the renewed lease agreement by vacating the premises on July 31, 2009 and failing to pay, inter alia, rents that were due and unpaid through December 31, 2010.

CRS filed its answer and affirmative defenses. CRS also filed a counterclaim, seeking damages for Building B1's breach of the lease for failing to return the security deposit and for failing to reimburse CRS for repairs made to the warehouse following Hurricane Wilma.

On September 28, 2012, CRS was administratively dissolved by the State of Florida for failing to file its annual report.[2] In April of 2015, the matter proceeded to a nonjury trial, and thereafter, the trial court found that the lease was not renewed, and that the discussions and correspondence between the parties merely constituted competing offers and counteroffers, the terms of which were never agreed upon by the parties.

_____

[2] CRS was reinstated on October 20, 2016.

3

The trial court concluded that Building B1 could not prevail on its breach of lease claim, because the lease expired by its terms on December 31, 2005, and on January 1, 2006, became a month-to-month tenancy pursuant to section 83.01, Florida Statutes (2006).[3] However, the trial court found that, because CRS vacated the warehouse on July 31, 2009 without giving proper notice, Building B1 was entitled to one month's rent (August 2009), pursuant to section 83.03(3), Florida Statutes (2009).[4]

As to CRS's counterclaim, the trial court found that, because the lease agreement had not been renewed, CRS was not entitled to reimbursement for the warehouse repairs on a breach-of-lease-agreement theory. The trial court determined, however, that based on the evidence presented at trial by CRS,

_____

[3] Section 83.01 provides:

> Any lease of lands and tenements, or either, made shall be deemed and held to be a tenancy at will unless it shall be in writing signed by the lessor. Such tenancy shall be from year to year, or quarter to quarter, or month to month, or week to week, to be determined by the periods at which the rent is payable. If the rent is payable weekly, then the tenancy shall be from week to week; if payable monthly, then from month to month; if payable quarterly, then from quarter to quarter; if payable yearly, then from year to year.

[4] Section 83.03 provides:

> A tenancy at will may be terminated by either party giving notice as follows:
>
> . . .
>
> (3) Where the tenancy is from month to month, by giving not less than 15 days' notice prior to the end of any monthly period. . . .

4

Building B1 had orally agreed to reimburse CRS for the Hurricane Wilma repairs pursuant to a "gentlemen's agreement." The trial court determined that CRS was thus entitled to be reimbursed for the cost of repairs to the warehouse, as well as return of its security deposit.[5] Finally, the trial court found that Building B1 was entitled to a setoff (asserted as an affirmative defense to CRS's counterclaim) for unpaid property taxes which CRS failed to pay during the relevant period.

The trial court applied the amounts to which Building B1 was entitled (August rent and property taxes) against the amounts to which CRS was entitled (security deposit and warehouse repairs) and thereafter entered a judgment (and later, an amended judgment) in favor of CRS for the net amount of $7,553.10. This appeal followed.

Building B1 first argues that the amended final judgment in favor of CRS must be reversed because CRS was administratively dissolved by the State of Florida and therefore, pursuant to section 607.1622(8), Florida Statutes (2012), CRS was prohibited from defending against Building B1's claims or maintaining its own counterclaim.

Section 607.1622(8) provides:

> Any corporation failing to file an annual report which complies with the requirements of this section shall not be permitted to maintain or defend any action in any court of this state until such a report is filed

[5] The lease required that the security deposit be returned to CRS within ten days after termination of the tenancy.

5

and all fees and taxes due under this act are paid and shall be subject to dissolution or cancellation of its certificate of authority to do business as provided in this act.

In the instant case, CRS was an active corporation at the time the cause of action accrued and at the time it filed its answer, affirmative defenses and counterclaim. CRS could therefore defend against Building B1's complaint and maintain its counterclaim. Building B1's challenge to CRS's corporate status, raised for the first time after final judgment and after notice of appeal, comes too late. Seay Outdoor Advert., Inc. v. Locklin, 965 So. 2d 325 (Fla. 1st DCA 2007) (rejecting challenge raised for the first time in a post-judgment motion seeking to set aside judgment as void, and holding that, under section 607.1405(2)(e), Florida Statutes (2012), cause of action filed prior to administrative dissolution could continue where such cause of action had accrued prior to dissolution). By not timely raising CRS's corporate status and securing a ruling on the issue from the trial court, Building B1 failed to properly preserve this issue for our review. Sierra by Sierra v. Pub. Health Tr. of Dade Cty., 661 So. 2d 1296, 1298 (Fla. 3d DCA 1995) (recognizing that, as a general rule, "[a]ppellate courts may not decide issues that were not ruled on by a trial court in the first instance.")

Further, and while not necessary to our resolution of this issue, we note that had Building B1 timely raised this issue during the pendency of the action, the trial court could have simply abated the action to allow CRS to reinstate (which CRS

6

did on October 20, 2016), and such reinstatement "'relates back to and takes effect as of the effective date of the administrative dissolution,' and treats the corporation as though it had never been dissolved." Allied Roofing Indus., Inc. v. Venegas, 862 So. 2d 6, 8 (Fla. 3d DCA 2003) (quoting § 607.1442(3), Fla. Stat. (2012)). This court further observed in Allied Roofing:

> The sanctions authorized for failing to file an annual report-involuntary dissolution and the inability to carry on any business, including bringing or defending a lawsuit, other than that necessary to wind up its affairs . . . are intended to benefit the State, not third parties outside the corporation/State relationship. Hence, the Venegases, "who are strangers to the dealings between plaintiff and the State, should not be allowed to take advantage of the plaintiff's default . . . to escape their own obligations to the plaintiff . . . ."

Id. at 9 (quoting Cosmopolitan Distribs., Inc. v. Lehnert, 470 So. 2d 738, 739 (Fla. 3d DCA 1985) (additional citations omitted)).

Building B1 next argues that the trial court erred by failing to award double rent, as damages under the lease for CRS's status as a holdover tenant. We find no error, as Building B1 never pleaded any entitlement to such damages. In its one-count complaint, Building B1 did not allege that CRS was a holdover tenant who failed to surrender the premises, but instead that Building B1 and CRS had renewed their lease for a new five-year period, and that CRS thereafter breached this renewed lease by vacating the premises before the end of the renewed term.[6]

---

[6] We find that there was competent substantial evidence presented at the nonjury trial to support the trial court's determination that the parties did not renew the lease. Verneret v. Foreclosure Advisors, LLC, 45 So. 3d 889 (Fla. 3d DCA 2010).

7

In its complaint, Building B1 alleged in detail the specific amount of unpaid rent to which it was entitled based upon CRS's alleged breach of the renewed lease. At no time did those damages include double rent based upon a theory that CRS was a holdover tenant, and Building B1 cannot recover on this unpled claim. Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So. 2d 562 (Fla. 1988); Michael H. Bloom v. Dorta-Duque, 743 So. 2d 1202 (Fla. 3d DCA 1999).

Alternatively, Building B1 asserts that this issue was tried by consent of the parties, under Florida Rule of Civil Procedure 1.190.[7] The record, however,

---

[7] Rule 1.190(a) and (b) provide:

**(a) Amendments.** A party may amend a pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed on the trial calendar, may so amend it at any time within 20 days after it is served. Otherwise a party may amend a pleading only by leave of court or by written consent of the adverse party. If a party files a motion to amend a pleading, the party shall attach the proposed amended pleading to the motion. Leave of court shall be given freely when justice so requires. A party shall plead in response to an amended pleading within 10 days after service of the amended pleading unless the court otherwise orders.

**(b) Amendments to Conform with the Evidence.** When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment, but failure so to amend shall not affect the result of the trial

establishes that when Building B1 raised the issue of double rent (and implicitly, CRS's purported status as a holdover tenant) for the first time during the trial in this cause, CRS objected. CRS argued that Building B1 never pleaded any such claim, and that CRS would be prejudiced if Building B1 were permitted to do so during trial. The trial court sustained the objection and did not permit Building B1 to amend its pleadings to assert the claim at trial.

While public policy generally favors application of rule 1.190 to permit amendment of pleadings, the rule's "liberal amendment policy diminishes as a case progresses to trial." Morgan v. Bank of N.Y. Mellon, 200 So. 3d 792, 795 (Fla. 1st DCA 2016). Ultimately, the decision is vested in the broad discretion of the trial court, and the touchstone consideration of this analysis is prejudice to the opposing party. Id. We find no abuse of discretion in the trial court's ruling, given the lateness of the request, CRS's objection and the ensuing prejudice resulting from its inability to prepare for or defend against this newly-advanced theory. See Designers Tile Int'l Corp. v. Capitol C Corp., 499 So. 2d 4 (Fla. 3d DCA 1986); Santi v. Zack Co., 287 So. 2d 127 (Fla. 3d DCA 1973).

---

of these issues. If the evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended to conform with the evidence and shall do so freely when the merits of the cause are more effectually presented thereby and the objecting party fails to satisfy the court that the admission of such evidence will prejudice the objecting party in maintaining an action or defense upon the merits.

Finally, Building B1 asserts that the trial court erred in finding in favor of CRS on its counterclaim and in finding Building B1 liable on an unpled theory of a breach of an oral agreement. The substance of the oral agreement was that Building B1 assured CRS it would reimburse CRS for expenses incurred in making the necessary repairs to the premises following Hurricane Wilma.

While it is true that CRS's counterclaim did not plead a breach of an oral agreement,[8] it is also true that the record supports the trial court's determination that this unpled theory was tried by consent of the parties. At trial, CRS presented testimony and evidence regarding the oral agreement between the parties. Building B1 raised no objection to the introduction of testimony regarding this oral agreement,[9] and Baitinger conceded in his own testimony that he had no basis to dispute the reasonableness of the repairs or the amount of money CRS spent in making the repairs. Further, Building B1 had a fair opportunity to defend against the unpleaded issue.[10] Dey v. Dey, 838 So. 2d 626, 627 (Fla. 1st DCA 2003).

---

[8] CRS's counterclaim instead alleged that Building B1's failure to reimburse CRS for repairs constituted a breach of the lease agreement.

[9] In fact, Building B1's counsel objected only to the cost of repairing the air conditioner, because that item of repair was outside the scope of CRS's pleadings. The trial court sustained the objection.

[10] More than two years before trial, Building B1 took the deposition of Steve Johnson (of CRS) who testified regarding the details of the oral agreement, including the fact that Baitinger orally promised Building B1 would reimburse CRS for expenses related to the repairs made following the hurricane. During trial, when CRS presented testimony regarding the existence and details of this oral agreement, Building B1 did not object, and thereafter had the opportunity to

An issue is tried by consent where the parties fail to object to the introduction of evidence on the issue. <u>Rosenberg v. Guardian Life Ins. Co.</u>, 510 So. 2d 610 (Fla. 3d DCA 1987); <u>Dep't of Revenue of State of Fla. v. Vanjaria Enters., Inc.</u>, 675 So. 2d 252 (Fla. 5th DCA 1996). <u>See also</u> Fla. R. Civ. Pro. 1.190(b) (providing: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). We find no error in the trial court's posttrial determination that this issue was tried by consent, and find no merit in the remaining issues raised by Building B1.

Affirmed.

---

question CRS's witness about it, and to present contrary evidence through its own trial witness, Baitinger.

11